F I L E D
United States Court of Appeals
Tenth Circuit

JUL 7 2004

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROCKY J. VOGL,

      Defendant - Appellant.

No. 03-1132

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 98-CR-257-D)

Philip A. Cherner, Law Office of Philip A. Cherner, Denver, Colorado, for
Defendant-Appellant.

James C. Murphy, Assistant U.S. Attorney, Denver, Colorado (John W. Suthers,
U.S. Attorney, Denver, Colorado, with him on the briefs), for Plaintiff-Appellee.

Before **EBEL**, **BRISCOE** and **TYMKOVICH**, Circuit Judges.

**EBEL**, Circuit Judge.

Rocky Vogl ("Defendant") entered a conditional plea of guilty to a charge

of cultivating marijuana, and then appealed in part on the ground that his rights

under the Speedy Trial Act had been violated. We held that the district court had

erred in finding an "ends of justice" continuance under 18 U.S.C. § 3161(h)(8)(A), and remanded for the court to determine whether Defendant's speedy trial clock had expired. See United States v. Vogl, 49 Fed. Appx. 861 (10th Cir. 2002). On remand, the district court held that the Speedy Trial Act had not been violated. Defendant now appeals that order.

Defendant raises two main arguments on appeal: (1) that the district court erred in excluding as "reasonable delay" a time period that accompanied the disposition of the government's motion to reconsider suppression of evidence against a codefendant; and (2) that the district court erred in tolling the speedy trial clock on the basis of the government's motion to reconsider because the motion did not cause any "actual delay." Because we find no error on the part of the district court, we now AFFIRM.[1]

## BACKGROUND[2]

On June 25, 1998, Rocky Vogl ("Defendant") and his wife Karen ("Codefendant") were jointly charged in the District of Colorado with cultivating marijuana in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B), and 18 U.S.C.

_____

[1]We grant Appellant's motion to adopt the appendix filed in Case No. 01-1459.

[2]All facts are taken from our prior unpublished decision in this case. See United States v. Vogl, 49 Fed. Appx. 861 (10th Cir. 2002).

§ 2.[3]  On September 1, 1998, the defendants filed separate motions for separate trials, and on September 11, 1998, they filed a joint motion to suppress evidence obtained in a search of their house.  On the same day, Codefendant also filed a motion to suppress a key taken from her purse at the time of the search.  The district court held hearings on these two suppression motions on January 5 and 20, 1999, at which time the district court did not take up the motions for separate trials, deferring consideration of that matter until after a ruling on the suppression motion.  The district court then took "this all under advisement."

The parties next appeared in court on September 7, 1999, at which time the district court heard further argument on Codefendant's motion to suppress, as well as the two severance motions.  The district court then took those motions under advisement.  During this hearing, although the parties indicated that they were "ready for trial," the court stated that it had a "very congested trial calendar" and that the first available trial date was November 22, 1999.  After this hearing, Defendant and the government each filed briefs regarding their respective positions on the speedy trial deadline.

---

[3]The indictment also contained a second count for forfeiture under 21 U.S.C. § 853, but this count was dismissed and is not at issue in this appeal.  The charges against Codefendant were also dismissed and are not at issue in any respect other than as background to understanding Defendant's speedy trial clock calculations.

On October 7, 1999, the district court granted Codefendant's motion to suppress the key, but denied both motions for separate trials. It did not, however, rule on the joint motion to suppress. At the end of this October 7 order, the court held:

> [T]he time from October 8, 1999 to November 24, 1999 shall be considered "excludable time" under 18 U.S.C. § 3161(h)(8)(A)(iv) upon the Court's own motion after consideration of the factual and legal issues which remain for trial in view of the status of the case based on the rulings contained in this Order. Further, the Court concludes that the ends of justice served by granting this period of delay outweigh the best interest of the public and the Defendants in a speedy trial.

On November 8, 1999, the government filed a motion to reconsider the part of this order granting Codefendant's motion to suppress. While the court was considering the government's motion, Defendant filed a motion to dismiss for violation of the Speedy Trial Act on November 10, 1999. The government's motion to reconsider was denied on November 17, 1999. In that same November 17 order, the court denied the defendants' joint motion to suppress the evidence seized in the search of their residence.

By a separate order issued on November 19, 1999, the district court granted a continuance (requested by both parties) and took under advisement Defendant's additional request that the indictment be dismissed on speedy trial grounds. On July 27, 2000, the district court denied Defendant's motion to dismiss for speedy

trial violation, holding that its "ends of justice finding satisfies the requirements of 18 U.S.C. § 3161(h)(8)(A)."

Pursuant to a plea agreement, Defendant entered a conditional plea of guilty on June 20, 2001 to the charge of cultivating marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. In that agreement, Defendant reserved the right to appeal the district court's denial of his motion to dismiss for violation of his rights under the Speedy Trial Act, 18 U.S.C. § 3161, and its denial of his motion to suppress the evidence obtained in the search of his home. Thereafter, Defendant was sentenced on September 27, 2001 to a term of five years probation with 90 days to be spent in community corrections and 90 days in home detention.

Defendant appealed both the denial of his motion to suppress and the denial of his motion to dismiss for violation of his speedy trial rights under 18 U.S.C. § 3161. On October 31, 2002, we affirmed the denial of his motion to suppress, but reversed and remanded the issue of speedy trial. United States v. Vogl, 49 Fed. Appx. 861 (10th Cir. 2002). Specifically, we held that the district court had provided inadequate findings to support its "ends of justice" holding and had not otherwise considered Defendant's motion to dismiss for violation of speedy trial. Id. at 864. Therefore, we remanded and charged the district court with the following: "The district court, for example, should find, *inter alia*, when the

-5-

speedy trial clock started, when the clock was tolled, when the clock thereafter resumed operation, and then determine whether the 70-day requirement of the Speedy Trial Act was met." Id.

On remand, the district court held a hearing on the speedy trial issue and then issued an order thoroughly analyzing all of the relevant dates and their tolling effect under the Speedy Trial Act. Ultimately, it concluded that Defendant's speedy trial rights had not been violated and it accordingly denied his motion to dismiss for lack of speedy trial under § 3161. Defendant now appeals this order.

## DISCUSSION

Jurisdiction:

In an April 25, 2003 Show Cause Order, we questioned the timeliness of Defendant's appeal under Rule 4(b)(1)(A). In response, Defendant forwarded us a copy of the district court's May 9, 2003 order, in which the court held that Defendant made a showing of "excusable neglect" for the late filing of his appeal. Although neither Defendant nor the government disputes this finding, we review it *sua sponte* as it pertains to our jurisdiction. See City of Chanute, Kansas v. Williams Natural Gas Co., 31 F.3d 1041, 1045 n.8 (10th Cir. 1994); see also Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61 (1982) (per curiam)

(stating that a timely notice of appeal is "mandatory and jurisdictional"). As explained below, we conclude that we have jurisdiction over the instant case.

Pursuant to Rule 4(b)(1)(A)(i), a defendant in a criminal case is generally required to file a notice of appeal in the district court within ten days after entry of the order being appealed. An order is "entered" for the purposes of Rule 4(b) when it is entered on the criminal docket. Fed. R. App. P. 4(b)(6). The district court's order denying Defendant's motion to dismiss for violation of the Speedy Trial Act was docketed on March 14, 2003, and the ten day period thus expired on March 28, 2003. Because Defendant did not file his notice of appeal until March 31, 2003, the notice was untimely filed.

However, if a district court finds "excusable neglect or good cause," it may extend the time to file a notice of appeal up to thirty days after expiration of the original deadline. Fed. R. App. P. 4(b)(4). In making this determination, a court must "tak[e] account of all relevant circumstances surrounding the party's omission." Pioneer Investment Servs. v. Brunswick Assocs., Ltd. P'ship, 507 U.S. 380, 395 (1993) (bankruptcy context); see also United States v. Torres, --- F.3d ---, 2004 WL 1345104, *3 (10th Cir. 2004) (applying Pioneer Investment Services in Rule 4(b) context). The four factors to be considered are: (1) the danger of unfair prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including

whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  <u>Id.</u> at *2.  We will not overturn a district court's determination that there has been "excusable neglect" under Rule 4(b) unless there has been a "clear abuse of discretion."  <u>Gooch v. Skelly Oil Co.</u>, 493 F.2d 366, 368 (10th Cir. 1974).

In its May 9, 2003 order, the district court cited the above standard and considered the relevant factors before finding the existence of "excusable neglect."  It noted that the length of delay was minimal and that the appeal was filed on the next business day following the deadline's expiration.  It emphasized the "inclement weather that disrupted defense counsel's (as well as this Court's) operations during this time period," in addition to "defense counsel's mistaken belief that Fed. R. App. P. 26(c) extended the ten-day period from which to appeal."  Although most of this analysis was proper, the court's reliance on counsel's mistake was not.

As the Supreme Court stated in <u>Pioneer Investment Services</u>, although "excusable neglect" is not strictly limited to omissions caused by circumstances beyond the movant's control, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect."  <u>Pioneer Investment Servs.</u>, 507 U.S. at 392.  We recently stated in <u>Torres</u> that "defense counsel's misinterpretation of a readily accessible, unambiguous rule cannot be

grounds for relief unless the word 'excusable' is to be read out of the rule." Torres, 2004 WL 1345104 at *3 (internal quotation omitted).

Therefore, if the district court in the instant case had rested its finding of "excusable neglect" solely on the defense counsel's misunderstanding of the plain and unambiguous language of Rule 26(c),[4] we would likely reverse for abuse of discretion and dismiss for lack of jurisdiction. However, in light of the fact that we only reverse in the event of "clear abuse of discretion," Gooch, 493 F.2d at 368, and we generally give greater deference in criminal appeals, see United States v. Prairie Pharmacy, Inc., 921 F.2d 211, 213 (9th Cir. 1990), we find that we have jurisdiction based on the other grounds in the district court's "excusable neglect" finding. Not only was the length of the delay very brief in this case, but there was "inclement weather" that interfered with the attorney's and the court's operations. The district court thus did not abuse its discretion in finding "excusable neglect" for Defendant's untimely notice of appeal, and we exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[4]The district court even pointed out that "Defendant's reliance on Rule 26(c) for an additional three days is patently incorrect" based on the wording of Rule 26(c) and Rule 4(b)(1)(A)(i).

Standard of Review:

"We review the district court's denial of a motion to dismiss for violation of the [Speedy Trial] Act for an abuse of discretion, and review the district court's compliance with the legal requirements of the Act *de novo*." United States v. Lampley, 127 F.3d 1231, 1244 (10th Cir. 1997). We accept the district court's factual findings in a Speedy Trial Act order unless they are clearly erroneous. United States v. Olivo, 69 F.3d 1057, 1060 (10th Cir. 1995). "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." United States v. Taylor, 487 U.S. 326, 337 (1988).

Analysis:

Congress enacted the Speedy Trial Act of 1974 ("the Act")[5] in part due to its dissatisfaction with district court plans under the old Rule 50(b), which implemented speedy trial rights under the Sixth Amendment. 3B CHARLES ALAN WRIGHT, NANCY KING & SUSAN KLEIN, FEDERAL PRACTICE AND PROCEDURE, Crim. § 833 at 396 (3d ed. 2004). Additionally, because the Supreme Court had been reluctant to define specific time periods under the speedy trial guarantee of

_____

[5]18 U.S.C. §§ 3161-3174 (2003).

the Sixth Amendment, Congress "thought it desirable to provide certainty in this amorphous area by establishing time limits." Id. at 397. "The purpose of the Speedy Trial Act is two-fold – to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." United States v. Gonzales, 137 F.3d 1431, 1432 (10th Cir. 1998) (internal quotations omitted).

The Act mandates that a trial must begin within 70 days of the filing date of the indictment or the defendant's first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1); see also Gonzales, 137 F.3d at 1432. The sanction for violation of the Act is dismissal of the indictment. 18 U.S.C. § 3162(a). However, the Act provides exclusions for specific delays that are not counted toward the seventy-day limit and thus stop the speedy trial clock. Two exclusions are the focus of this opinion: the exclusion for reasonable delay attributable to proceedings regarding a codefendant (§ 3161(h)(7)) and the exclusion for "pretrial motions" (§ 3161(h)(1)(F)).

In the hearing before the district court, the parties stipulated that the critical dates at issue in Defendant's speedy trial clock calculations were November 8 and 9, 1999. This is because there was only one day left on Defendant's speedy trial clock as of November 8, which is the day the government filed a motion to reconsider the order granting Codefendant's motion

to suppress a key found in her purse.  If the government's motion to reconsider that order stopped the clock, then Defendant's speedy trial period did not expire on November 9, 1999.[6]  On November 10, Defendant filed his motion to dismiss, which would then become a separate basis for tolling the clock.  Defendant concedes that his appeal hinges entirely on these dates and that the district court's decision must be affirmed if we find that the government's motion to reconsider the order granting Codefendant's motion to suppress stopped his trial clock on November 8 and 9.  Accordingly, we focus our discussion solely on the narrow issues that Defendant raises on appeal regarding that order.

## I.

**Excludable Time for "Reasonable" Delay Accompanying Government's Motion Regarding Codefendant (18 U.S.C. § 3161(h)(7))**

Section 3161(h)(7) contains one of the exclusions for a pre-trial delay that is not counted toward the seventy-day limit in the Speedy Trial Act.  Specifically, it excludes "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for

---

[6]Under these circumstances, the clock would be stopped from the date of filing that motion (November 8) until the date it was decided (November 17). Note that the actual amount of tolling that would occur solely due to this particular motion, however, would only be 2 days because Defendant then filed a motion to dismiss on November 10 (which tolled the clock in its own right).

severance has been granted."[7]  18 U.S.C. § 3161(h)(7).  An exclusion for delay "attributable to one defendant is applicable to all co-defendants."  United States v. Mobile Materials, Inc., 871 F.2d 902, 915 (10th Cir. 1989).

"The obvious purpose behind the exclusion [in § 3161(h)(7)] is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial."  United States v. Theron, 782 F.2d 1510, 1514 (10th Cir. 1986).  The legislative history of the Act demonstrates that "in the application of the 'reasonableness' standard under section 3161(h)(7), judicial efficiency in the trial of multiple defendants is to be preferred to an inflexible adherence to the letter of the Speedy Trial Act."  Mobile Materials, 871 F.2d at 916 (discussing legislative history); see also United States v. Varella, 692 F.2d 1352, 1359 (11th Cir. 1982) ("[Congress] felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time.").

---

[7]The relevant part of 18 U.S.C. § 3161 reads in full:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

>    (7)    A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

The question in examining an exclusion under § 3161(h)(7) is whether the delay attributable to the codefendant is "reasonable." Olivo, 69 F.3d at 1061. In making this determination, a court must examine "all relevant circumstances." Theron, 782 F.2d at 1514; see also United States v. Tranakos, 911 F.2d 1422, 1426 (10th Cir. 1990). The Tenth Circuit has provided three factors to guide courts in examining the relevant circumstances: (1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to "accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." Olivo, 69 F.3d at 1061-62; see also Tranakos, 911 F.2d at 1426. We have given the following guidance to courts analyzing the third factor: "Where the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred." Tranakos, 911 F.2d at 1426; see also Olivo, 69 F.3d at 1061. This inquiry into the "reasonableness" of the delay attributed to proceedings regarding a codefendant is heavily factual. Mobile Materials, 871 F.2d at 916.

In the instant case, the district court correctly considered all of the relevant circumstances in exercising its discretion and excluding November 8 and 9 from the speedy trial clock under § 3161(h)(7) due to the government's motion for

-14-

reconsideration of the order granting Codefendant's motion to suppress.

Significantly, Defendant was free on bond. As the <u>Tranakos</u> court pointed out, this fact is an "important" one weighing in favor of finding a "reasonable" delay under subsection (h)(7). <u>Tranakos</u>, 911 F.2d at 1426. The district court also noted that the delay was only for two days, which points toward finding it to be "reasonable." Additionally, although Defendant was pursuing his right to a speedy trial, the court held that the delay would accommodate the efficient use of prosecutorial and judicial resources. Defendant and Codefendant lived in the same house where the marijuana was cultivated and the government would be calling the same witnesses and using much of the same evidence for each. This weighs in favor of finding "reasonable" delay.[8] <u>See</u> <u>Olivo</u>, 69 F.3d at 1061.

The district court utilized the correct legal standard and considered each of the relevant factors before deciding to exclude November 8 and 9 from Defendant's speedy trial clock under § 3161(h)(7), and its application of these

---

[8]Defendant argues that the delay associated with the government's motion regarding Codefendant did not accommodate judicial efficiency in trying the two defendants together because the government's motion was "unique" to Codefendant. What is important is not whether the *motion* deals with the same evidence as Defendant's case, but rather whether the government will use similar evidence and witnesses in both Defendant's and Codefendant's trials, such that the two cases should be consolidated for trial.

factors to the circumstances of this case was not an abuse of discretion.[9]

Therefore, we AFFIRM the court's holding.

## II.

### Excludable Time for Pretrial Motion That Causes
### No "Actual Delay" of Trial (18 U.S.C. § 3161(h)(1)(F))

Defendant correctly argues that even if the delay attributable to the government's November 8, 1999 motion regarding Codefendant is "reasonable" under § 3161(h)(7), the delay cannot be excluded unless the motion was a "pretrial motion" under § 3161(h)(1)(F). The Speedy Trial Act directs courts to exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). However, Defendant is incorrect when he insists that a motion that causes no "actual delay" of the trial is not a "pretrial motion" within the Act's meaning, and is therefore outside the scope of subsection (h)(1)(F).

---

[9]Defendant also argues that delay from the government's motion for reconsideration regarding Codefendant's motion to suppress was not "reasonable" because the motion did not present any new facts or evidence and because it was not necessary for the government to file this motion before requesting an interlocutory appeal. These arguments are without supporting authority or merit.

In Gonzales, we declined to exclude time from the defendant's speedy trial clock, and in the process, provided some language that Defendant has incorrectly read to suggest that the Speedy Trial Act excludes only pretrial motions that actually cause delay. 137 F.3d at 1435. We stated that "no hearing was required and no delay resulted from the filing of [defendant's] motion," which was a written motion to dismiss on Speedy Trial Act grounds that mirrored an earlier oral objection that the district court had denied. Id. The thrust of the opinion was the fact that the written motion "simply served to reduce to writing the objections [defendant] raised at the July 15 hearing." Id. This was because "the district court had already resolved the issue against him, the motion was effectively moot at the time it was filed[.]" Id. This was not a true motion, as the court was not asked to do anything. Rather, the defendant had simply filed a memorandum that reduced his earlier oral objections to writing. In other words, we did not hinge our finding in Gonzales on the lack of actual delay.

To read an "actual delay" requirement into Gonzales would distort its holding and contradict both the Supreme Court's and our own Court's insistence that § 3161(h)(1)-(6) exclusions are "automatic." See Henderson v. United States, 476 U.S. 321, 327 (1986); United States v. Young, 45 F.3d 1405, 1411 n.6 (10th Cir. 1995). The circuit courts are unanimous in holding that "actual delay" is not required for excluding time attributable to a pretrial motion pursuant

-17-

to § 3161(h)(1)(F).[10]  For example, in United States v. Montoya, 827 F.2d 143

(7th Cir. 1987), the Seventh Circuit recognized that although the "statutory

language on its face could be construed to require a causal relationship" between

the exclusions and delay of trial, the legislative history behind the Act mandated

automatic exclusions without any inquiry into whether there was any actual delay:

> From the legislative history two things are clear.  One is that Congress
> did intend the various classifications of excludable delay in §§ 3161(h)
> (1-7) to be invoked automatically upon proof that the proceedings were
> pending.  The other is that the "delay" referred to is not of the trial
> itself, but instead of the final date on which the trial must commence.
> In other words, Congress did not seek to determine the reality of whether
> or not a particular proceeding interfered with the commencement of trial;
> it used the word "delay" to denote a period of time during which the
> speedy trial clock would be stopped and the expiration of the 70-day
> period thereby postponed.  By this means, Congress sought to structure

---

[10]"This contention [that actual delay is required] has been rejected in each circuit in which it has been raised."  United States v. Van Brandy, 726 F.2d 548, 551 (9th Cir. 1984).  See, e.g., United States v. Titlbach, 339 F.3d 692, 698 (8th Cir. 2003); United States v. Miles, 290 F.3d 1341, 1350 (11th Cir. 2002); United States v. Salimonu, 182 F.3d 63, 68 (1st Cir. 1999); United States v. Parker, 30 F.3d 542, 548-49 (4th Cir. 1994); United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993); United States v. Montoya, 827 F.2d 143, 151 (7th Cir. 1987); United States v. Wilson, 835 F.2d 1440, 1443 (D.C. Cir. 1987); see also 46 A.L.R. Fed. 358.

The Fourth Circuit in Parker, 30 F.3d at 550, suggests that if it found that the motions on which the district court justified repeated delays were "clearly frivolous or merely ministerial, [it] would not hesitate to reverse for an abuse of discretion."  Id.  We need not consider whether to adopt a similar exception because the motion here was clearly not frivolous or merely ministerial.  In fact, the district court held that had it granted the government's motion, "it would obviate the need for a lengthy interlocutory appeal and permit a trial of both defendants to proceed shortly thereafter as scheduled."

> a method of calculating time which would be reasonably and practically, although not necessarily directly, related to the just needs for pretrial preparation in a particular case.

Id. at 151 (quoting United States v. Cobb, 697 F.2d 38, 42 (2d Cir. 1982), *disapproved of on other grounds*, United States v. Matsushita, 794 F.2d 46, 51 (2d Cir. 1986)).

Similarly, in United States v. Parker, the Fourth Circuit held that because the Supreme Court has stated that the § 3161(h)(1) exclusions are "automatic," see Henderson, 476 U.S. at 327, and because Congress did not intend to require "any particularized judicial determination that the pretrial motion had actually caused a delay of trial," no actual delay was necessary for these Speedy Trial Act exclusions. 30 F.3d 542, 549-50 (4th Cir. 1994).

Although we have not previously reached this precise question of whether "actual delay" must exist before excluding time under § 3161(h)(1), we find the reasoning of our sister circuits persuasive and consistent with our prior precedent. See Tranakos, 911 F.2d at 1426-27 (holding that § 3161(h)(1)(F) applies automatically without the need to inquire into the "true cause" of the delay); see also Young, 45 F.3d at 1411 n.6 (holding that § 3161(h) exclusions are "automatic"). Accordingly, we now join these other circuits in holding that no "actual delay" is required for a district court to exclude time under § 3161(h)(1)(F), and we AFFIRM the district court.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's holding that Defendant's rights under the Speedy Trial Act have not been violated.