FILED
United States Court of Appeals
Tenth Circuit

April 19, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HAROLD TIMOTHY GALLAWAY,

Defendant-Appellant.

No. 10-2261
(D.C. No. 1:08-CR-02702-BB-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

Harold Timothy Gallaway appeals the district court's order pursuant to

*Sell v. United States*, 539 U.S. 166 (2003), that he be committed to the custody of

the Attorney General for 120 days of hospitalization and psychological treatment,

including forcible treatment with antipsychotic medication. Because the district

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court did not clearly err in determining that the proposed course of treatment is medically appropriate for Mr. Gallaway, we affirm the order.

I.

Mr. Gallaway suffers from Bipolar I Disorder, severe with psychotic features. After he was charged with six counts of bank robbery, the district court found that he was incompetent to be tried. The court ordered him to be committed for psychiatric treatment and evaluation. Psychologist Carlton Pyant and psychiatrist Kwanna Williamson evaluated Mr. Gallaway over four months at a federal medical center and issued a report concluding that he was incompetent to stand trial, but that his competency likely could be restored by treatment with antipsychotic medication. Mr. Gallaway refused to consent to the treatment.

On September 9, 2010, the district court held a hearing to determine whether the medication should be forcibly administered. After hearing testimony from Dr. Pyant and Dr. Williamson that reaffirmed their written report, the court considered the factors set forth in *Sell*, *see* 539 U.S. at 180-81. Ultimately the court issued a written order concluding that: (1) the United States has a significant interest in restoring Mr. Gallaway to competency, so it can proceed with its prosecution for serious federal crimes; (2) the proposed course of medication is substantially likely to restore Mr. Gallaway to competency and is substantially unlikely to result in side effects that would interfere with his ability to assist his counsel in defending against the charges; (3) forcibly medicating

-2-

Mr. Gallaway is the only way to restore his competency, and thus is necessary to further the interest of the United States; and (4) clear and convincing evidence demonstrates that the proposed course of medication is medically appropriate.

Mr. Gallaway appealed, but his notice of appeal was filed two days late. He moved for a time extension, citing excusable neglect  The district court granted his Fed. R. App. P. 4(b)(4) motion to extend the time to file the notice of appeal.

## II.

## A.

We initially address the United States' two motions to dismiss the appeal, the first on the ground of untimeliness and the second on the ground of mootness.

### *Timeliness*

While an untimely notice of appeal in a criminal case is not "mandatory and jurisdictional," "the time bar in Rule 4(b) must be enforced by this court when properly invoked by the government." *United States v. Mitchell*, 518 F.3d 740, 744 (10th Cir. 2008) (quotation omitted).  The district court's decision to grant an extension is reviewed for a clear abuse of discretion. *See United States v. Vogl*, 374 F.3d 976, 981 (10th Cir. 2004).

The district court's order extending the time to appeal is a summary order that does not contain analysis or reasoning.  We agree with the United States that it would have been preferable had the district court explained its reasoning.  After

reviewing the record, however, we conclude that in these circumstances the court did not clearly abuse its discretion in granting an extension. "[B]y empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings" in limited circumstances. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (quotation and citation omitted). Because "the determination is at bottom an equitable one," we must "tak[e] account of all relevant circumstances surrounding the party's omission." *Id.* at 395. Taking account of all the circumstances, we do not conclude that the district court abused its discretion in granting the extension. *See City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (holding that district court did not abuse its discretion in granting an extension, even though the reason for the neglect was "arguable," in light of the circumstances of the case and the fact that the other three *Pioneer* factors favored the movant); *see also Vogl*, 374 F.3d at 982 ("[W]e generally give greater deference in criminal appeals."). Thus, the notice of appeal was timely filed and this court may hear this interlocutory appeal. *See Sell*, 539 U.S. at 177 (holding that the collateral-order exception applies to appeals of forced-medication orders).

*Mootness*

Unlike the timeliness of the notice of appeal in a criminal case, mootness is a jurisdictional issue, *see Chihuahuan Grasslands Alliance v. Kempthorne*,

-4-

545 F.3d 884, 891 (10th Cir. 2008). But a case is moot only "when it is impossible to grant any effectual relief." *Id.* "Even where it is too late to provide a fully satisfactory remedy the availability of a partial remedy will prevent the case from being moot." *BioDiversity Conservation Alliance v. Bureau of Land Mgmt.*, 608 F.3d 709, 714 (10th Cir. 2010) (alterations and quotations omitted). "If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result." *Chihuahuan Grasslands Alliance*, 545 F.3d at 891 (quotation omitted).

The United States argues that this appeal is moot because Mr. Gallaway has been committed to a federal medical center and has begun treatment. These facts, however, do not establish the lack of any effectual remedy. The district court authorized commitment and forcible medication for a period of 120 days in an effort to make Mr. Gallaway competent for trial. If we were to reverse the district court's order at any time before the end of the 120-day period or before Mr. Gallaway becomes competent, he would be able to avoid at least some portion of the involuntary treatment. The government has not shown that the treatment period has expired, that Mr. Gallaway has been declared competent, or that the treatment has been discontinued for any other reason. Thus, there remains at least a partial remedy. The appeal is not moot.

B.

Moving on to the merits, "we bear in mind that involuntary administration of antipsychotic medications implicates a constitutional right." *United States v. Bradley*, 417 F.3d 1107, 1113 (10th Cir. 2005). "[A]n individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs – an interest that only an essential or overriding state interest might overcome." *Sell*, 539 U.S. at 178-79 (quotations omitted).

In *Sell*, the Supreme Court identified four factors that must be satisfied before a defendant may be committed and forcibly medicated for the purpose of making him competent to stand trial. "First, a court must find that *important* governmental interests are at stake." *Id.* at 180. "Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests." *Id.* at 181. As part of the second factor, the court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial" and "that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *Id.* "Third, the court must conclude that involuntary medication is *necessary* to further those interests." *Id.* And "[f]ourth, . . . the court must conclude that administration of the drugs is *medically appropriate, i.e.*, in the patient's best medical interest in light of his medical condition." *Id.*

-6-

The first and second factors primarily are legal questions, reviewed de novo. *See Bradley*, 417 F.3d at 1113. The third and fourth factors depend on factual findings, so they are reviewed for clear error. *See id.* at 1114. "A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (quotations omitted). In light of "the vital constitutional liberty at stake" in avoiding forcible medication, in undertaking a *Sell* analysis the district court must find all facts by "clear and convincing evidence." *Bradley*, 417 F.3d at 1114. "[T]he government establishes a fact by clear and convincing evidence only if the evidence places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228-29 (10th Cir. 2007) (alteration and quotations omitted).

In this appeal, Mr. Gallaway challenges only the finding on the fourth factor, that forcible medication is medically appropriate for him. With regard to this factor, the district court found that antipsychotic medication "has a well-documented history of producing beneficial clinical effects in patients with the same psychosis as [Mr. Gallaway]." Aplt. App., Vol. 1 at 27. The court also acknowledged that there were risks of side effects, but, according to the medical experts, "these risks were manageable and would be monitored closely." *Id.*

"The doctors further noted that the risk associated with not treating [Mr. Gallaway's] illness are significant." *Id.*

Mr. Gallaway argues that the United States has not shown that the medical benefits to him outweigh the "significant risks." Aplt. Br. at 24. He contends that the United States can forcibly medicate him only for the time needed for him to face the charges against him; that the proposed course of treatment is not reliably based on his particular circumstances; that he has shown he is capable of attaining competency without medication; and that the risks from the medication, including the possible side effects, "are considerable." *Id.* at 26. In support of his arguments, he points to *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 704-06 (9th Cir. 2010), in which the Ninth Circuit held that the district court clearly erred with regard to the fourth *Sell* factor.

In *Ruiz-Gaxiola*, the government's position that the proposed treatment was the appropriate treatment for the defendant's specific mental condition "was thoroughly discredited by the defense and ultimately abandoned by the government." *Id.* at 697. And because the Ninth Circuit concluded with regard to the second *Sell* factor that there was no record support for the proposition that proposed treatment was substantially likely to restore the defendant's competency, it could not affirm the decision on the fourth *Sell* factor. *Id.* at 704. Similarly, in reversing a forcible-medication order in *Valenzuela-Puentes*, we

noted that persuasive record evidence contradicted the district court's conclusions about the efficacy of the proposed treatment. 479 F.3d at 1228-29.

In contrast, in this case the district court credited the government's witnesses, and the record contains no contrary medical evidence. The medical experts opined that Mr. Gallaway was not likely to become competent without medication, and outlined why other forms of treatment likely would not work.[1] Further, referring to his specific condition, they opined that the particular treatment they suggested was substantially likely to render him competent. The record is clear that the treatment carries the risk of serious side effects, including tardive dyskinesia. But the medical experts outlined protocols for minimizing the risks of side effects, and they testified that they would monitor him closely and modify or eliminate the treatment if they observed any profound side effects. They also indicated that there were risks to leaving his mental illness untreated. The medical practitioners' unrebutted report and testimony provides clear and convincing evidence to support the district court's order. Finally, although not part of the district court record, Mr. Gallaway filed supplemental briefing in this

---

[1] Mr. Gallaway suggests that he has shown an ability to become competent without medication as recently as August 2008, and therefore "even if involuntary medication would return [him] to a stable state, non-intrusive waiting might accomplish the same thing." Aplt. Br. at 26. But Mr. Gallaway was declared incompetent in November 2009, so a year passed without improvement before the court ordered treatment. And when asked whether he was likely to come out of his manic state on his own, the psychiatrist testified it was "unlikely that his symptoms will improve in a timely manner, without . . . an adverse outcome" such as disruptive and problematic behaviors. Aplt. App., Vol. 3 at 9-10.

appeal after the medication began, and identified no serious side effects as a result of the treatment. Accordingly, the court did not clearly err in finding that the proposed treatment was medically appropriate for Mr. Gallaway. *See Bradley*, 417 F.3d at 1115.

III.

The government's motions to dismiss the appeal for untimeliness and for mootness are DENIED. The district court's order is AFFIRMED.[2]

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[2] On April 13, 2011, this court received a voluminous set of documents from Mr. Gallaway. Because he is represented by counsel in this appeal, we deny leave to file these pro se documents. *See United States v. Hildreth*, 485 F.3d 1120, 1125 (10th Cir. 2007).